UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SEBASTIAN HERNANDEZ,<br><br>  Plaintiff,<br><br>v.<br><br>JAMES McKINLEY, et al.,<br><br>  Defendants. | Case No. 1:22-cv-00171-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Sebastian Hernandez's Complaint as a result of his status as an inmate and his in forma pauperis request. The Court must review the Complaint to determine whether it or any of the claims contained in it should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order permitting Plaintiff to proceed in part.

REVIEW OF COMPLAINT

1. Introduction

Plaintiff is a prisoner in custody of the Idaho Department of Correction (IDOC). He alleges that the state actor defendants committed various acts of excessive force upon him, ignored incidents of excessive force instead of intervening, or failed in their supervisory roles to do anything to correct their subordinates and prevent further incidents from occurring. He asserts that these acts violated his federal constitutional and state law rights.

For the reasons that follow, Plaintiff may proceed on some of his claims but must file an amended complaint if he desires to proceed on other claims.

2. **Standard of Law**

The Court must dismiss any portion of a prisoner or in forma pauperis complaint that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a plausible civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Unconstitutionally excessive force in a post-conviction custodial setting occurs when a government actor subjects a prisoner to gratuitous or disproportionate force that has no object but to inflict pain. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Stated differently, prison officials' use of force does not violate the Eighth Amendment as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Id*. To review an allegation of excessive force, a court

considers "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992); *see also Whitley*, 475 U.S. at 321.

Title 28 U.S.C. § 1367 provides that a district court may exercise supplemental jurisdiction over state law claims when they are "so related" to the federal claims "that they form part of the same case or controversy under Article III of the United States Constitution." In other words, the supplemental jurisdiction power extends to all state and federal claims ordinarily expected to be tried in one judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).[1]

A state law claim of civil battery is defined as an intentional, unpermitted contact upon the person of another which is unlawful, harmful, or offensive. *White v. University of Idaho*, 797 P.2d 108, 109 (1990). The state of mind element necessary for battery is the intent to commit the act, not the intent to cause harm or offense. *Id*.

3. **Discussion**

   **A. *Officer James McKinley***

On or about June 14, 2021, Plaintiff requested a cell transfer but changed his mind and refused to accept the change, because he thought the new cellmate might sexually

---

[1] In addition, to maintain a state law cause of action, a plaintiff must provide sufficient evidence that he complied with the provisions of the Idaho Tort Claims Act (ITCA), Idaho Code § 6-901, *et seq.*, should Defendants assert that he did not. Idaho Code § 6-905 requires: "All claims against the state arising under the provisions of this act and all claims against an employee of the state for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the secretary of state within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later."

assault him. Plaintiff had just learned that the new cellmate had received a Disciplinary Offense Report (DOR) for allegedly raping another inmate. Officer James McKinley refused to allow Plaintiff to remain in his current cell, but forced him to move, even after hearing Plaintiff's reasons. Plaintiff alleges that McKinley and others choked and beat him to extract Plaintiff from his cell, and that Plaintiff suffered bruises, sprains, and abrasions from the incident. *See* Dkt. 3-1, pp. 1-2. Plaintiff may proceed on an Eighth Amendment excessive force claim and a state law battery claim against Officer McKinley.

### B.  *Officer James Bopari*

On July 19, 2021, Plaintiff's entire unit was moved from a medium security facility to a maximum security facility. In the medium security facility, officers kept on hand two ice chests filled with ice for inmates to use to self-treat their injuries. Plaintiff asked officers in the new facility to provide the inmates with a similar ice chest, explaining that he rated his pain level between seven and ten and needed regular access to ice to alleviate his pain. The officers refused.

Plaintiff says that he "became frustrated." Dkt. 3-1, p. 3. He does not explain how he exhibited his frustration to Officer Bopari, but when Bopari reached for his pepper spray, Plaintiff took one step forward and asked him why he was reaching for his spray. Plaintiff alleges that Bopari "slam[med] his first into the middle of [Plaintiff's] chest and left it there." *Id*., p. 4.

Reviewing these allegations under the *Hudson* considerations, the Court finds that Plaintiff's admission that he expressed frustration to Bopari, stepped forward, and challenged Bopari's instinct to use the taser amounts to a reasonably-perceived threat.

Because Plaintiff stepped forward, Bopari had little time to think. Instead of using the taser, he chose a less-severe defensive act of placing and leaving his fist on Plaintiff's chest to effectively prevent Plaintiff from further approaching Bopari. Plaintiff has not alleged that Bopari caused more than de minimis harm to Plaintiff.

The Court concludes that the current set of allegations shows that the officer reasonably perceived that an application of force was immediately necessary. The Court also concludes that the relationship between that need and the amount of force used was reasonable, as the other immediate alternative was the taser. *See* Dkt. 3-1, pp. 3-4. The current allegations show that the use of force did not rise to the level of a constitutional violation, and the claim against Bopari will be dismissed without prejudice. Plaintiff may file an amended complaint if he has other allegations that may aid in stating a claim.

C. *Officers Quintin Price and Gabriel Topete*

On August 9, 2021, Officer Quintin Price escorted Plaintiff to the medical unit in a rough manner. Plaintiff asserts: "Instead of asking me to wait, C/O Price yanks on my arm, sending me falling backwards into him." Dkt. 3-1, p. 5. Plaintiff asked Price not to do that again, and Price allegedly threatened that he would throw Plaintiff on the ground next time. Price continued to grip Plaintiff's arm "overly tight" and kept Plaintiff on a "short rein" throughout the escort. This incident made Plaintiff feel like he was assaulted and made him feel scared and nervous. *Id.*, pp. 5-8.

After Plaintiff's medical appointment concluded, Plaintiff told medical staff or Price that he wanted someone other than Price to escort him back to his cell. Plaintiff alleges that he was handcuffed behind his back. Plaintiff alleges that, without provocation, Price lunged

INITIAL REVIEW ORDER BY SCREENING JUDGE - 5

at Plaintiff and slammed him to the ground face first, splitting open Plaintiff's chin. Plaintiff alleges that Price threw "punches and elbows and knees." Dkt. 3-1, p. 7. Plaintiff also alleges that Price held all of his weight unnecessarily on Plaintiff's legs, causing "a tendon to pop loudly and [causing] a bad sprain. *Id.*, p. 8.

Plaintiff alleges that Defendant Topete rushed to aid Price and that Topete also punched, elbowed, and kneed Plaintiff. Plaintiff asserts that Topete unnecessarily used his weight to hold Plaintiff down, which caused the handcuffs to dig into his hands, causing bleeding wounds. Dkt. 3-1, p. 8.

Plaintiff may proceed against Defendants Price and Topete on Eighth Amendment excessive force claims and state law battery claims arising from the take-down incident in the medical unit.

### D. *Medical Providers John Epperson and William Wingert*

Plaintiff asserts that medical provider John Epperson was rude and verbally aggressive with Plaintiff during a medical appointment. When Plaintiff told Epperson he had the right to receive adequate care and treatment, Epperson stopped the appointment short of completion to send him back to his cell. When Officer Price threw Plaintiff to the ground and beat him, Epperson and Nurse William Wingert did nothing to intervene.

The Court concludes that Plaintiff has not stated an actionable claim against Epperson and Wingert. Verbal abuse is not a constitutional violation. *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987); *see Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987); *Shabazz v. Cole*, 69 F.Supp.2d 177, 198-201 (D. Mass. 1999). In addition, an unarmed, untrained medical provider has no duty to intervene in a physical confrontation

between inmates and prison guards, where it might place the medical provider in danger of physical harm. *See Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *11 (N.D. Tex. Mar. 27, 2015), *report and recommendation adopted as modified*, No. 3:12-CV-2458-M-BN, 2015 WL 3504518 (N.D. Tex. May 28, 2015) (in qualified immunity setting, the court held that medical personnel, unlike corrections officers who have a legal duty to intervene in use of force settings, have no special duty to do so, and an inmate may not sustain a failure to intervene claim); *Ali v. McAnany*, 262 F. App'x 443, 446 (3d Cir. 2008) (the court held that a "failure to intervene" claim may not be maintained against a prison nurse in a use of force episode involving other corrections staff, because "she [was] not a corrections officer and thus did not have a duty to intervene"); *Harris v. Hershey Med. Ctr.*, No. 1:08–cv–843, 2009 WL 2762732, at *6 (M.D. Pa. Aug. 27, 2009) (dismissing claims brought against nurse for failure to intervene in the alleged use of force by corrections officers).

Plaintiff may not proceed against Defendants Epperson and Wingert for failure to intervene. Plaintiff has not stated a claim upon which relief can be granted.

### E.  Nurse Jamie Smith

Plaintiff asserts that, after he was assaulted by correctional officers, Nurse Jamie Smith came to his cell and determined that all of his injuries were temporary and would heal over time. He asserts that the Constitution required her to do something more.

The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Eighth Amendment does not provide a right to a specific treatment, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), and differences in judgment between an inmate and prison medical providers regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim, *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

To state an Eighth Amendment claim involving choices between alternative courses of treatment, the plaintiff must plausibly allege "that the chosen course of treatment was medically unacceptable under the circumstances" (an objective showing), and "was chosen in conscious disregard of an excessive risk to the prisoner's health" (a subjective showing). *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (punctuation and alteration omitted)). Medical malpractice or negligence will not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm. *Jett v. Penner*, 439 F.3d 1091, 1096-98 (9th Cir. 2006).

Plaintiff asserts that his injuries required Nurse Smith to do something other than perform an evaluation. He alleges he had a sprained leg; a numbing sensation and pain in his hand and thumb; and scrapes, cuts, and bruises everywhere. In addition, Plaintiff asserts that he received "no further evaluation, treatment or care, not due to my own ineffort [sic]." Dkt. 3-1, p. 10.

These allegations are insufficient to state a deliberate indifference claim. Plaintiff has not met the objective factor. He has not stated allegations showing that he sought additional medical treatment and received vastly different care, which would raise a

question of whether Smith's evaluation was so far outside the realm of reasonable responses to Plaintiff's injuries that it was medically unacceptable under the circumstances. Without more, his claim is a layperson's disagreement with a medical professional's opinion.

Neither has he met the subjective factor with any allegations showing that Smith's evaluation and conclusion that Plaintiff's injuries should be left them to heal on their own were done out of a reckless disregard for an excessive risk to his health. *Farmer v. Brennan*, 511 U.S. 825, 835, 838 (1994).

Plaintiff implies that he received no further treatment for the injuries, but it is unclear what "not due to [his] own ineffort [sic]" means and whether Nurse Smith was the person responsible for receiving and triaging any written requests for further medical care. Plaintiff may file an amended complaint if he has additional factual allegations that would support an Eighth Amendment deliberate indifference claim.

### F. Officer Justin Tillema

On November 6, 2021, Plaintiff was housed in the medical unit. Officer Justin Tillema refused to provide Plaintiff with a clean sleeper system after Plaintiff told Tillema that Plaintiff had suffered a seizure and had soiled his current sleeper system with stomach bile, spit, and blood. After Tillema left the cell, Plaintiff kicked the cell door, opening the utility port. Plaintiff then tried to stuff his sleeper system through the utility port door. Tillema came back and slammed the heavy metal utility door closed on Plaintiff's arms repeatedly. Plaintiff forced the utility door open all the way, and then Tillema grabbed Plaintiff's left hand and pulled on it, beating Plaintiff's arm against the door frame, causing

bruising, bleeding, and spraining. Plaintiff may proceed against Tillema on these Eighth Amendment excessive force and state law battery violation claims.

### G. Officers Wayne Wilson and Cody Niecko

On or about November 10, 2021, Plaintiff was placed in B-Block, Unit 3, Cell 67, where the light switch was damaged to the point that it sparked and smoked. The faucet in the cell was also damaged, and sprayed water onto the floor with each use. Plaintiff told officers this combination was an electrocution hazard and asked to be moved immediately. Officers told him to use the regular concern form/work order system to remedy the issue. Plaintiff asked officers to move him repeatedly, "for hours and into the night." Dkt. 3-1, p. 15.

In his own words, Plaintiff then "did the only think I knew would get me out of that cell and force[] the c/o's to remove me." *Id*. He does not provide details of what he did, but he complains that officers responded to his act by using excessive force in performing the cell extraction that Plaintiff purposefully orchestrated. Plaintiff may not proceed on his claim that officers endangered his life by placing him in a cell that posed an electrocution hazard because he has not identified the persons responsible for placing and retaining him in that cell. He may file an amended complaint containing this claim if he obtains that information.

Plaintiff may proceed on an excessive force claims against Niecko and Watson. While it appears that a *reasonable* use of force likely was an appropriate response to Plaintiff's calculated bad behavior, *excessive* use of force is never appropriate.

Plaintiff further asserts that officers placed him in the specific cell with the

electrocution hazard in retaliation for Plaintiff having filed grievances and DOR appeals and telling officers that he intended to file suit against them. However, Plaintiff has not shown who, exactly, was responsible for placing him in that cell, how they knew about his complaints, and why they had incentive to punish him for making complaints. He may file an amended complaint if he has additional information to fill in these gaps.

### H. Officer Brian Nicholls

On April 5, 2022, Plaintiff made statements to Officer Brian Nicholls that Nicholls found offensive. After Plaintiff became upset, Nicholls allegedly threw Plaintiff against the wall; tackled him to the ground; punched him in the ribs and face; and put his weight and pressure on Plaintiff's hands that were already cuffed, causing his wrist and hands to bleed and sustain nerve damage. Dkt. 3-1, p. 17. Plaintiff states that Nicholls falsely accused Plaintiff of spitting on him to cover up an unreasonable use of force. Because Plaintiff's allegations show that the force used by Nicholls could have been excessive, Plaintiff may proceed on an Eighth Amendment and a state law battery claim.

### I. Lieutenant Gibney and Timothy Richardson

Plaintiff filed an Offender Concern Form (OCF) to complain of Officer Price's use of force. Lieutenant Gibney reviewed the OCF and approved of Price's actions with the statement, "I have reviewed the surveillance video." Dkt. 3-1, p. 9. Plaintiff asserts that there are no surveillance cameras in the medical unit, and that Gibney lied to protect Price. Plaintiff then filed a grievance. Richardson did not grant Plaintiff's grievance at the appellate level. Plaintiff asserts that these responses mean Richardson and Gibney supported Price's abuse of Plaintiff.

These allegations fail to state actionable § 1983 claims for the following reasons. The prison grievance procedure does not confer any substantive rights upon inmates. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (inmates have "no legitimate claim of entitlement to a grievance procedure"). Generally, prison officials' actions in reviewing and denying inmate appeals cannot serve as a basis for liability under § 1983. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Prison officials reviewing grievances cannot be held liable for the constitutional violation committed by another person when the violation had already occurred at the time they reviewed the grievance. Such allegations lack a causal connection between an act that occurred in the past and the injury. *See, e.g., George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not"). *See also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (same).

But a supervisory defendant may be held liable under § 1983 if there is "a sufficient causal connection between the *supervisor's* wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation omitted, emphasis added). Theories under which liability may result include when defendant failed to properly train or supervise personnel resulting in the alleged deprivation, *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680 (9th Cir. 1984); when the alleged

deprivation resulted from custom or policy enacted by the supervisory defendant,[2] *see id.*; or when the supervisory defendant knew of the subordinate's alleged misconduct in the past and failed to act to prevent future misconduct, *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Prison officials cannot be held liable in their supervisory capacities under § 1983 liability simply because they are supervisors; there is no respondeat superior liability under § 1983. *Id.*

While prison supervisory officials can be held liable for their own part in subordinates' violations, Plaintiff has not stated sufficient supporting facts to state a claim under any formulation of a § 1983 supervisory claim. The claims against these grievance reviewers and supervisors will be dismissed without prejudice. If Plaintiff chooses to amend his complaint and re-plead this cause of action, he must provide enough facts to state a plausible claim that supervisory defendants had charge over the at-issue subordinates and that the supervisors' action or inaction was the proximate cause of Plaintiff's injury or damage.

### J.  *Supervisors Susan Wessels, Timothy Richardson, and Tyrell Davis*

Plaintiff appealed several DORs he received, contesting his punishment for guilty findings in the prison's internal disciplinary system. Wessels, Richardson, and Davis refused to reduce the sanctions Plaintiff had received. Plaintiff asserts that these Defendants

---

[2] A "[p]olicy or custom may be inferred if, after the [alleged incident], the prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in error." *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1980). A prerequisite to such a claim, of course, is showing that the officers' conduct was in error. Should the evidence obtained in discovery or submitted by the parties during summary judgment proceedings reveal a jury question regarding the officers' conduct, Plaintiff may point to that evidence in a motion to amend the complaint to reassert a supervisory claim.

supported the officers' actions, did nothing to object to or correct what the officers did, and did nothing to ensure Plaintiff's safety before or after any of these incidents. Like the discussion above about the Defendants sued for their part in the grievance process, state actors who took part in the prison disciplinary process also are not liable for causing Plaintiff's injuries or damages. If Plaintiff has additional facts that would support a supervisory liability claim, he may re-assert these claims in an amended complaint.

### K. Conspiracy Claims

The elements of a claim of conspiracy to deprive another of his civil rights are as follows: "(1) the existence of an express or implied agreement among the [defendants] to deprive [the plaintiff] of his constitutional rights; and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. U.S.*, 927 F.2d 1504, 1512 (9th Cir. 1991) (*Bivens* action relying on § 1983 case, *Dooley v. Reiss*, 736 F.2d 1392, 1394-95 (9th Cir. 1984)). Each conspirator "need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *See Fonda v. Gray*, 707 F.2d 435, 438 (1983) (citation and punctuation omitted).

Plaintiff has not provided sufficient facts supporting a claim that some or all of the Defendants formed an agreement to work together to deny Plaintiff of his civil rights. If he has such facts, he may re-assert the claim in his amended complaint.

### 4. Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful or that they have been presented in a procedurally proper manner. Rather, this Order merely finds that Plaintiff's claims are plausible—

meaning that these claims will not be summarily dismissed at this time but should proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

### 5. Request for Appointment of Counsel

Plaintiff also seeks appointment of counsel. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

Plaintiff's Complaint, liberally construed, states a claim upon which relief could be granted if the allegations are proven at trial. Plaintiff's only explanation for his need for counsel is "I am diagnosed with ADD." Dkt. 3, p. 9. However, Plaintiff's pleadings show that he can protect his interests by articulating his claims in an appropriate way. He has not shown how his ADD condition prevents him from pursuing his case, and he may file requests for extensions of time for deadlines if needed to accommodate his condition. In addition, the legal issues in this matter do not appear to be complex.

Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel without prejudice. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Request for Appointment of Counsel (contained in the Complaint) is DENIED.

2. Plaintiff may proceed on the following claims: Eighth Amendment and related state law claims against **James McKinley, Quintin Price, Gabriel Topete, Justin Tillema, Cody Niecko, Wayne Wilson,** and **Brian Nicholls**. All other claims against all other Defendants are DISMISSED without prejudice, and all other Defendants are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[3]

3. Defendants will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer

---

[3] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend.").

INITIAL REVIEW ORDER BY SCREENING JUDGE - 16

or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3, 3-1), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

> **Mary Karen Magnelli**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of Defendants.

4. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

5. If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

6. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 17

7. Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

8. Dispositive motions must be filed no later than 300 days after entry of this Order.

9. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to

Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14. Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: January 11, 2023

_____
David C. Nye
Chief U.S. District Court Judge